UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————————x

WESTINGHOUSE ELECTRIC &
MANUFACTURING COMPANY, LLC
d/b/a WESTINGHOUSE ELECTRIC
CORPORATION,

     Plaintiff,

  -against-

SALZER ELECTRONICS, LTD.,
RAJESH KUMAR DORAISWAMY,
WESTINGHOUSE CONTROL, LLC,
GLADIATOR MANUFACURING
SOLUTIONS, LLC,

     Defendants.

————————————————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2025

25 Civ. 7279 (CM)

## DECISION AND ORDER GRANTING MOTION
## TO COMPEL ARBITRATION AND STAY CASE

McMahon, J.:

This lawsuit, originally filed by Plaintiff Westinghouse Electric in New York State Supreme Court and subsequently removed to this court, alleges that Defendants Salzer and Doraiswamy, who are citizens of India, breached a certain License Agreement between Salzer and Westinghouse Electric – Salzer by failing to meet sales goals and make payments due under the License Agreement, and Doraiswamy by failing to guarantee Salzer's payment and performance. The License Agreement contained an arbitration clause, one that provided for final and binding arbitration administered by the International Centre for Dispute Resolution (ICRD) in the event the parties were unable to come to any informal resolution of "any dispute related to this Agreement." Westinghouse Electric also sues an entity entitled Westinghouse Control, the

"Designated Affiliate" of Licensee Salzer, alleging that Control – which, as Designated Affiliate, is both provided for in the License Agreement and is party to an E-Commerce Agreement that is related to the License Agreement – breached the License Agreement by continuing to sell products covered by the Agreement after Westinghouse terminated it. A third party named Gladiator – ostensibly used as a front by the other Defendants to evade their responsibilities under the now-terminated License Agreement – is also named as a defendant.

All Defendants were sued for "trespass to chattels" and for unjust enrichment. The complaint also seeks a declaratory judgment that Defendants are not entitled to sell any remaining inventory *pendente lite.*

Federal jurisdiction is predicated on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards – which requires contracting states to give effect to international agreements to arbitrate, *see* 9 U.S.C. § 206 – and 9 U.S.C. § 205, which authorizes removal of cases where the arbitration agreement is subject to the Convention.

Following removal, Defendants moved to compel arbitration and stay proceedings in this lawsuit. Plaintiff opposes the motion.

The motion is GRANTED.

**The Agreements in Suit**

The complaint in this action is attached as Exhibit A to the Notice of Removal (Dkt. No. 1). It alleges that on or about June 1, 2020, Westinghouse Electric Corporation (a predecessor in interest to Plaintiff) entered into a License Agreement and a separate Trade Name Agreement (Exhibits A and B to the Complaint, respectively) with Salzer, a public limited company with its principal place of business in Coimbatore, India.

Pursuant to the License Agreement, Salzer – which manufactures and sells electronic equipment – was authorized to sell certain designated products under the Westinghouse brand and trade name in the United States, Canada, and Mexico. The License Agreement contemplated that sales would be made on-line, through an affiliate of Salzer (the "Designated Affiliate"), and Control was identified as the "Designated Affiliate" through whose platform sales would be made. Salzer agreed to pay royalties on the products it sold under the Westinghouse name; to submit samples of those products to Westinghouse for approval prior to offering them for sale under the Westinghouse trademark; and to enter into a sublicense agreement with Control, its Designated Affiliate, pursuant to which Control would assume all of Salzer's obligations under the License Agreement.  Dkt. No. 1, Ex. A. The License Agreement included a number of terms designed to make sure that Westinghouse retained control over the use of its trade name. The License Agreement ran through December 2023 (the "Base Term") and could be extended only in accordance with Section 9.2 of that Agreement.

The Trade Name Agreement separately granted Salzer the right to use the Westinghouse trade name on the products covered by the License Agreement, and for no other purpose. The Trade Name Agreement was entered into in connection with sales of products covered by the License Agreement, and so is "related to" the License Agreement. No additional royalty was payable for use of the Trade Name in connection with the License Agreement.

Both the License Agreement and the Trade Name Agreement were expressly conditioned on Doraiswamy's guaranteeing Salzer's performance thereunder, and his unconditional guarantee was attached to the License Agreement (Dkt. No. 1, Ex. A) as Appendix D.

On or about December 1, 2023 – which is to say, upon the expiration of the Base Term of the License and Trade Name Agreements – Westinghouse and Control entered into a separate E-

Commerce Agreement, which incorporated the terms and conditions of the original License Agreement and provided for additional E-commerce assistance services to be provided by Control to Westinghouse (Dkt. No. 1, Ex. A, Ex. C thereto).

On or about December 12, 2023, Plaintiff and Salzer executed an amendment to the License Agreement, substituting Plaintiff for the original licensor, revising the minimum annual sales and royalty amounts payable thereunder, and extending the term of the License Agreement through 2025. (Dkt. No. 1, Ex. A, Ex. D thereto).

The License Agreement contained the following dispute resolution clause:

12.1 Dispute Resolution. In case of any dispute related to this Agreement, or breach thereof, the Parties shall first attempt to resolve such dispute on an informal basis led by each party's management personnel…

12.2 Arbitration. If the Parties are unable to resolve any dispute informally, then the Parties shall submit such dispute to final and binding arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules.

The International Arbitration Rules of the International Centre for Dispute Resolution provide as follows:

Art. 21.1. The arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to arbitrability, to the existence, scope, or validity of the arbitration agreement(s), or with respect to whether all of the claims, counterclaims, and setoffs made in the arbitration may be determined in a single arbitration without any need to refer such matters first to a court.

By adopting these rules, the parties to the License Agreement conferred upon the arbitrators, and removed from any court, the power to determine whether particular disputes are arbitrable.

The Dispute

Westinghouse alleges that Salzer/Control failed to achieve minimum annual gross sales amounts and fell into arrears with respect to minimum guaranteed royalty payments. This led

Westinghouse to terminate the License Agreement and the associated agreements, effective October 3, 2024. Plaintiff further alleges that Salzer and/or Control (and Doraiswamy) improperly retained products and proceeds that were supposed to be sent to Westinghouse Electric following termination. Plaintiff also alleges that Salzer breached its obligation, imposed by both the License and the Trade Name Agreements, to bind Control to a written sublicense, and to exercise control of Control in order to get it to comply with the License Agreement, to guarantee full performance by Control under those agreements, and to obtain Control's compliance with Section 7.3 of the Trade Name Agreement – which requires Salzer and, by virtue of its status as Salzer's Designated Assignee, Control – to cease using the Westinghouse trade name upon termination of the underlying agreements. Finally, Westinghouse sues Gladiator – an entity whose relationship to Salzer (unlike that of Control, the Designated Affiliate under the License Agreement) is not clear – alleging that it is selling branded Westinghouse products that are being provided to it by the other Defendants, in an effort to skirt any limitations on Control's ability to sell Westinghouse products on-line.

These allegations create disputes that are "related to" the License Agreement.

The Lawsuits

Notwithstanding the above-quoted arbitration clause, there are presently two lawsuits pending in connection with the Dispute.

Defendant Control – which, its name notwithstanding, is the Designated Affiliate of Salzer, not of Westinghouse Electric – brought a lawsuit in the Court of Common Pleas of Butler County, Pennsylvania (the "Pennsylvania Action"), seeking to set aside the cancellation of the relevant contracts and asking for a declaration that it was entitled to continue selling products under the Westinghouse trade name. In that lawsuit, Control brought a motion for a preliminary injunction

and Westinghouse Electric brought a motion to dismiss the complaint in the Pennsylvania Action. It does not appear that anyone ever brought a motion to compel arbitration in the Pennsylvania Action or tried to remove that lawsuit to a federal court; nonetheless, the lawsuit has been dormant since last April.

Having been haled into court in Pennsylvania, Westinghouse Electric brought suit in the New York State Supreme Court in and for New York County. That is the lawsuit that has been removed to this court.

Defendants immediately moved to compel arbitration; Westinghouse Electric takes the position that Defendants waived any right to arbitrate by bringing the Pennsylvania Action; it also asserts that there is no basis to compel arbitration at this time because there have been no efforts at informal resolution, which is a condition precedent to arbitration.

The Result

Defendants' motion to compel arbitration is granted.

"A court having jurisdiction under [the Federal Arbitration Act] may direct that arbitration be held in accordance with the agreement at any place therein provided for." 9 U.S.C. § 206. Indeed, the Federal Arbitration Act "compels judicial enforcement of . . . written arbitration agreements." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). However, where the parties have granted the arbitrator the power to decide issues of arbitrability, a court's mandate is limited to deciding whether the parties have agreed to arbitrate. *Rent-A-Center, W., Inc., v. Jackson*, 561 U.S. 63, 68-69 (2010); *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 943 F.3d 568, 584 (2d Cir. 2019).

Westinghouse Electric signed the License Agreement. That Agreement contains an arbitration clause. Its terms include an agreement to arbitrate before the ICDR any disputes that

"relate to" the License Agreement. The disputes between the parties plainly relate to the License Agreement and its corollary agreements.

Westinghouse further agreed that it would arbitrate any such disputes pursuant to the ICDR's International Arbitration Rules. Those rules remit to the arbitrator all questions relating to arbitrability.

Westinghouse Electric does not dispute any of this. It makes two arguments (and only two) for why Defendants' motion should be denied. First, it contends that Defendants waived their right to arbitrate because of the Pennsylvania Action, which was brought by Salzer's Designated Affiliate, Control, and which seeks resolution of the same disputes. Second, Westinghouse asserts that the right to compel arbitration has not yet been triggered, because the parties have not engaged in a management-to-management informal dispute resolution process – a condition precedent to arbitration.[1] Significantly, Westinghouse does not argue that it has not agreed to arbitrate with any of the Defendants – specifically, with Control and Gladiator, neither of which (unlike Salzer and Doraiswamy) signed the License Agreement containing the arbitration clause.

Whether the right to arbitrate has been waived, and whether arbitration is premature, are certainly important questions – questions that need to be answered. But they relate not to whether there exists an agreement to arbitrate, but to whether these particular disputes are arbitrable, or are arbitrable at this time. It is not for this court to decide those issues. All I can decide is whether the parties have agreed to arbitrate. They have. The rest is for the arbitrators. *Contec Corp v. Remote Sol. Co.*, 398 F. 2d 3d, 205, 208 (2d Cir. 2005) (incorporation of rules that empower arbitrator to

---

[1] Defendants insist that it is Westinghouse that has refused to engage in informal dispute resolution. See Reply Br., Dkt. No. 10 at 4-5.

decide issues of arbitrability is clear and unmistakable evidence of intent to delegate such issues to arbitrator).[2]

As Defendants note, Westinghouse Electric does not argue that, if there is to be an arbitration, Control and Gladiator are also bound to arbitrate – even though they, unlike Salzer and Doraiswamy, are not signatories to the License Agreement. As to Control, I can fully understand Westinghouse's position. Control is Salzer's Designated Affiliate under the License Agreement; this means that, per the terms of the License Agreement (see Dkt. No. 1, Ex. A, ¶ 1.10), it is controlled by a party to that Agreement (obviously, Salzer, despite the use of the word "Westinghouse" in Control's formal name). Control's relationship to the parties to the Agreement is clearly outlined; it is the only approved sublicensee of the rights created under the License and Trade Name Agreements and so benefits from the commercial relationship that the License Agreement creates. Finally, the License and Trade Name Agreements create rights in Control that will necessarily be impacted by the arbitration, and findings by the arbitrator will include findings about whether Control participated in the breaches alleged by Westinghouse Electric, and whether it was enriched thereby. All of this suggests that Westinghouse has agreed to arbitrate disputes relating to the License Agreement with the Designated Affiliate, Control. *Contec*, 398 F. 3d at 209 (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F. 3d 403, 404 (2d Cir. 2001)).

---

[2] Because waiver goes to the issue of arbitrability, the arbitrator will have to decide whether, if Control has waived its right to arbitrate by bringing the Pennsylvania Action, the other Defendants – who are not parties to the Pennsylvania Action – have also waived that right. Since Control, as an affiliate of Salzer (see License Agreement, ¶ 1.10) is "controlled" by Salzer, it is quite possible that Salzer and Doraiswamy waived any right to arbitrate by causing Control to sue Westinghouse Electric in Butler County, Pennsylvania. But since there is no reason why the parties cannot delegate a decision on that issue to the arbitrators, *PEB, Inc. v. Premium Merch. Funding 26, LLC,* 2025 U.S. Dist. LEXIS 12558 at *18-21, there is no reason why an arbitrator cannot resolve this issue – if necessarily by taking testimony. This court will still be here if the arbitrator concludes that the right to arbitration has been waived by any party.

The only reason why Control might not be bound to arbitrate is if it waived arbitration by bringing the Pennsylvania Action. But waiver, as I have said, is an issue that relates to arbitrability, and so it is for the arbitrator to decide.

As to Gladiator, the matter is much murkier, and the parties have not been particularly forthcoming. Unlike Control, Gladiator – which is alleged by Westinghouse Electric to be a "third party" – is not only not a signatory to the License Agreement; it is not mentioned or contemplated in the License or Trade Name Agreements, or in the E-Commerce Agreement.  That is because only the "Designated Affiliate" (Control) can be sublicensed by Salzer to sell Westinghouse products. As a result, the License Agreement confers no benefit on Gladiator; indeed, the allegations of the complaint are that Gladiator is being used to facilitate the breach of the License Agreement by the other Defendants. Therefore it cannot be, as Defendants allege Control to be, a third party beneficiary of the agreements.

There is also no reason for the court to know one way or the other whether Gladiator is an "affiliate" of Salzer within the meaning of ¶ 1.10 of the License Agreement – which is to say, there is no evidence about whether Salzer can exert any control at all over Gladiator.

All of this suggests that Westinghouse Electric is not bound to arbitrate anything with Gladiator. This would be true even though Westinghouse Electric alleges that Gladiator received and is selling on-line inventory properly belonging to Westinghouse Electric, which has not licensed it to use its name – issues that will inevitably be bound up in the arbitration, since if Gladiator is receiving Westinghouse-branded inventory, it is getting that inventory from other Defendants. Arbitration is a creature of contract, and no one can be compelled to arbitrate against someone if he never agreed to do so. *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 374 (1974); *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 190 (2d Cir. 2019).

So had Westinghouse Electric argued that it was not contractually bound to arbitrate with Gladiator, I would have concluded that its argument was correct, and I would have allowed this lawsuit to proceed as against Gladiator alone. But Westinghouse made no such argument. It argues only that Control's commencement of the Pennsylvania Action operates as a waiver of arbitration by all parties – which is an issue for the arbitrator to decide.

Because Westinghouse has not argued that it is not required to arbitrate specifically with Gladiator – because it has never agreed to arbitrate with Gladiator – it has waived the argument. Since Gladiator does not argue that it is not bound by the arbitration clause and obviously prefers to have the dispute as against it bundled up with the disputes against the parties who have agreed to arbitrate, I will compel arbitration as against all Defendants. The party resisting arbitration bears the burden to show that the arbitration agreement is inapplicable; Westinghouse has chosen to make no such showing. *See Tarrant v. City of Mount Vernon*, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021); *see also Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 32 (S.D.N.Y. 2024).

So the motion to compel arbitration is GRANTED.

In the Second Circuit, the practice is to stay lawsuits filed in our courts while an arbitration covering the claims in suit is pending. *Katz v. Cellco P'Ship*, 794 F. 3d 341, 347 (2d Cir. 2015). Therefore, all proceedings in this case are stayed, and the case will be placed on the court's suspense calendar. The prevailing party in the arbitration must notify the court within 30 days after the award is handed down, so that the stay can be lifted. The case will be disposed of at that time.

This constitutes the decision and order of the court. It is a written decision. The clerk is directed to remove the motion at Docket No. 6 from the court's list of open motions.

Dated: December 16, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL